**Derrick J. BENSON, Appellant,**

v.

**KANSAS CITY, Missouri, BOARD OF POLICE COMMISSIONERS, Respondent.**

**No. WD 74283.**

Missouri Court of Appeals, Western District.

May 15, 2012.

James T. Thompson and Melissa L. Steed, Kansas City, MO, for appellant.

Lauren A. Horsman, Jefferson City, MO, for respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, CYNTHIA L. MARTIN, Judge and JOEL P. FAHNESTOCK, Special Judge.

CYNTHIA L. MARTIN, Judge.

Derrick Benson ("Benson") appeals from the trial court's judgment entering summary judgment in favor of the Kansas City Board of Police Commissioners ("the Board"). Benson contends that the trial court erred in concluding that the Board was entitled to sovereign immunity, notwithstanding statutory waiver of sovereign immunity for injuries arising out of the negligent operation of a motor vehicle, because there could not be a finding that its employee who caused Benson's injuries

was negligent because the employee was not named as a defendant and because its employee was protected from liability by the public duty doctrine. We reverse and remand.

### Factual and Procedural Background

On April 12, 2006, at approximately 3:30 a.m., a collision occurred between Benson and Kansas City, Missouri Police Officer Charles Evans ("Officer Evans") at the intersection of Armour Boulevard and Gillham Road. Officer Evans was traveling northbound on Gillham Road because he was following another officer who had been dispatched to an alarm call. Benson was traveling eastbound in the westbound lane of Armour Boulevard. Officer Evans's police wagon and Benson's bicycle collided in the intersection. As a result of the impact, Benson was ejected from his bicycle and suffered injuries for which he was transported to Truman Medical Center to receive treatment.

Benson filed a petition against the Board and the City of Kansas City ("the City"). The petition alleged that Benson sustained injuries as a result of Officer Evans's failure to activate his vehicle's flashing lights, sirens, or both and as a result of his failure to keep a careful lookout for other vehicles before entering the intersection. Those failures, the petition alleged, constituted negligence for which

the Board and the City were vicariously liable under the doctrine of *respondeat superior* because, at the time of the accident, Officer Evans was an employee of the Board and the City and acting within the course and scope of his employment.

The Board filed a motion for summary judgment. The sole legal basis raised by the Board for the entry of judgment in its favor was its claim that the Board was entitled to sovereign immunity because, under the public duty doctrine, Officer Evans owed no duty to Benson and thus could not be found negligent.[1] Thus, the Board argued, the waiver of its sovereign immunity set forth in section 537.600.1(1)[2] for injuries arising out of the negligent operation of a motor vehicle did not apply. Benson filed suggestions in opposition contending that, according to *Southers v. City of Farmington*, 263 S.W.3d 603 (Mo. banc 2008), the public duty doctrine does not shield a governmental entity like the Board from *respondeat superior* liability where sovereign immunity has been statutorily waived. The Board never advanced an argument to the trial court attempting to distinguish *Southers*. Notwithstanding, the trial court entered summary judgment in favor of the Board.

Shortly thereafter, the City filed an identical motion for summary judgment. Benson again filed suggestions in opposition, and "urge[d] this Court to read

---

1. The Board's legal argument in the motion for summary judgment was as follows:

   To sue for negligence, a plaintiff must show that the defendant owed a duty to the plaintiff, breached that duty, and the breach was the proximate cause of the plaintiff's injuries. *Stanley v. City of Independence*, 995 S.W.2d 485, 487 (Mo. banc 1999). A public employee is acting under a duty to the general public, rather than to a particular individual such as plaintiff, for his on-the-job actions and omissions. This "public duty doctrine" applies to reaches of both ministerial and discretionary functions.

*Jungerman v. City of Raytown*, 925 S.W.2d 202, 205 (Mo. banc 1996). The "public duty doctrine" applies to claims made against law enforcement officers for their work-related actions. *Southers v. City of Farmington, Missouri*, 263 S.W.3d 603, 610 (Mo. banc 2008). Application of the public duty rule leaves a plaintiff unable to prove all the elements of his claim for negligence. *Id.* at 612–13.

2. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

*Southers* before deciding on the City's motion." Benson also filed a motion asking the trial court to reconsider its grant of summary judgment in favor of the Board. The Board opposed the motion to reconsider, arguing that because the motion was not filed within thirty days of the trial court's grant of summary judgment, the trial court had lost its power to modify the judgment pursuant to Rule 75.01.

On December 9, 2010, the trial court entered an order ("Order") that denied the City's motion for summary judgment. The Order stated: "Pursuant to *Southers v. City of Farmington*, 263 S.W.3d 603 (Mo. banc 2008) and the statutory waiver of immunity provided by RSMo. § 537.600.1 (2010), this Court finds that the public duty doctrine does not shield the City from tort liability where the legislature has expressly abolished such immunity." The Order also denied Benson's motion for reconsideration of the grant of summary judgment in favor of the Board, explaining that the motion was untimely according to Rule 75.01.[3]

Benson dismissed the City without prejudice following the trial court's Order. Once the City was no longer a party, the trial court's entry of summary judgment in favor of the Board constituted a final judgment from which Benson appealed.

## Standard of Review

"The standard of review when considering an appeal from the grant of summary judgment is essentially *de novo*." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 119 (Mo. banc 2010) (citing *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)). "Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 119–20 (citing *Larabee v. Eichler*, 271 S.W.3d 542, 545 (Mo. banc 2008); Rule 74.04(c)(6)). "The court accords the nonmoving party the benefit of all reasonable inferences in the record." *Id.* at 120 (citing *ITT*, 854 S.W.2d at 376). "[The entry] of summary judgment may be affirmed under any theory that is supported by the record." *Id.* (citing *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010)).

## Analysis

Benson argues on appeal that the trial court erred in granting summary judgment in favor of the Board. Benson claims that by enacting section 537.600.1(1), the legislature waived sovereign immunity for the Board for injuries

---

**3.** Although the trial court's rejection of Benson's motion to reconsider is not before us, we note that the trial court erred. Rule 75.01 provides in relevant part: "The trial court retains control over *judgments* during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time." (Emphasis added.) If the judgment is not final, though, Rule 75.01 does not apply, and the trial court retains jurisdiction to enter a final judgment. *Spicer v. Donald N. Spicer Revocable Living Trust*, 336 S.W.3d 466, 469 (Mo. banc 2011). A judgment is not final until it "dispose[s] of all issues and all parties in the case." *Id.*; Rule 74.01(b).

When the trial court entered summary judgment in favor of the Board, there were still issues and parties before the trial court. In particular, Benson's suit against the City remained. Thus, the trial court's grant of summary judgment in favor of the Board was not a final judgment. Though the trial court could have found, as permitted by Rule 74.01(b), that no just reason for delay existed as to permit immediate appeal from the grant of summary judgment in favor of the Board, it did not do so. The trial court's grant of summary judgment in favor of the Board was thus an interlocutory judgment that could have been reconsidered on Benson's request.

resulting from the negligent operation of a vehicle, and according to *Southers*, that waiver of sovereign immunity remains intact even though the public duty doctrine shields Officer Evans from personal liability.

In response, the Board advances the same argument on appeal as it did in its summary judgment motion. The Board claims that since the public duty doctrine precludes a finding of negligence as to Officer Evans, it follows that the Board cannot have *respondeat superior* liability, and that the section 537.600.1(1) waiver of sovereign immunity thus does not apply. The Board also argues that "because no claim was ever brought against Officer Evans, there could never be any finding that Officer Evans acted negligently," and that "[w]ithout a determination that Officer Evans acted negligently, the Board's sovereign immunity was not waived." The latter argument, which essentially claims that vicarious liability can never be established unless the person whose acts give rise to the liability is named as a defendant, was not raised in the Board's motion for summary judgment and is raised for the first time on appeal.

█ We first address the Board's argument that the public duty doctrine, which protects Officer Evans from personal liability, necessarily requires the conclusion that the Board cannot have *respondeat superior* liability, notwithstanding waiver of sovereign immunity in connection with the negligent operation of a motor vehicle. Government entities are protected from tort liability by sovereign immunity. *Davis v. Lambert–St. Louis Int'l Airport*, 193 S.W.3d 760, 764 (Mo. banc 2006); *see also* section 537.600.1 ("Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect

prior to that date, shall remain in full force and effect...."). Section 537.600.1(1) waives that immunity for government entities as to "[i]njuries directly resulting from the ***negligent*** acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment." (Emphasis added.) Thus, in order for a government entity to be found liable under this statute, there must be a finding that a public employee of the government entity acted negligently.

█ The public duty doctrine, on the other hand, protects a public officer from civil liability for his or her negligence. The public duty doctrine recognizes that a public officer owes a duty to the public, and not to a particular individual. "The public duty doctrine states that a public [officer] is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual." *Southers*, 263 S.W.3d at 611. In other words, the doctrine negates the duty element of negligence so that an individual plaintiff cannot succeed in establishing a cause of action for negligence against a public officer. *Id.* at 612.

Thus, the issue that this case presents is whether negligence for the purposes of triggering *respondeat superior* liability for a government entity under section 537.600.1(1) can be found when the public duty doctrine negates the ability to establish a public officer's negligence. Our Supreme Court resolved this very question in *Southers v. City of Farmington*.

The relevant facts that gave rise to the *Southers* decision are as follows: A police officer was pursuing a robbery suspect who was fleeing the scene of the crime. *Southers*, 263 S.W.3d at 607. While in pursuit, the police officer's vehicle collided with another vehicle that was being driven by a woman. *Id.* at 608. The woman and

one of her passengers died as a result of the injuries sustained in the collision. *Id.* Two other passengers—the woman's children—sustained injuries but survived. *Id.* The woman's children and mother brought a suit against the City of Farmington, claiming that the police officer was acting negligently at the time his vehicle collided with the woman's vehicle. *Id.* The City of Farmington moved for summary judgment, arguing that the public duty doctrine insulated it from *respondeat superior* liability based on the officer's negligence. *Id.*

■ Before making its decision, our Supreme Court engaged in a lengthy discussion of the application of and policy underlying sovereign immunity, official immunity,[4] and the public duty doctrine. *Id.* at 609–13. The court recognized the logic of the City of Farmington's argument: "Arguably, where there is no underlying tort, there can be no *respondeat superior* liability." *Id.* at 612. But the court rejected the argument, finding that the legislature, in enacting section 537.600.1(1), absolutely waived sovereign immunity for injuries arising out of the negligent operation of motor vehicles. *Id.* at 613. The court held:

> In deference to the statutory waiver of sovereign immunity provided by section 537.600.1, this Court is no longer willing to apply the judicially-created protections of the public duty doctrine in a way that would insulate government entities

from tort liability where the legislature has expressly abolished such immunity.... Application of the public duty doctrine should not expand the scope of a sovereign's immunity beyond that intended by statute, nor be contrary to the legislature's intent.

*Id.* (internal citations omitted). Thus, "[g]overnment employers **cannot** claim an extension of the protections of the public duty doctrine from their defendant employees in cases where the alleged negligence is a type covered by a waiver of immunity protections, such as the negligent operation of a motor vehicle." *Id.* at 613–14 (emphasis added).

The holding in *Southers* is directly applicable here. Despite the clarity of the holding in *Southers,* the Board raised the exact argument raised by the City of Farmington in its motion for summary judgment and reiterates the same argument on appeal. Our Supreme Court was explicit in its holding—the public duty doctrine does not shield government entities from liability where the legislature has waived sovereign immunity for the type of negligence alleged by the plaintiff, even if the public duty doctrine shields the negligent employee from personal liability. In light of the unequivocal holding in *Southers,* the Board's summary judgment motion was wholly without merit, and the trial court's grant of summary judgment in the Board's favor was clearly contrary to the law.[5]

---

4. Official immunity is a "judicially-created doctrine [that] protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers,* 263 S.W.3d at 610 (citing *Davis,* 193 S.W.3d at 763). Official immunity is not at issue in this case.

5. The trial court obviously realized its legal error when it denied the City's subsequently filed, but *identical,* motion for summary judg-

ment, as it explained in its Order denying the City relief that, under *Southers,* "the public duty doctrine does not shield the City from tort liability where the legislature has expressly abolished such immunity." A possible explanation for the trial court's inconsistent rulings on identical summary judgment motions is Benson's emphatic urging in response to the City's motion that the trial court read *Southers* before ruling. A mere superficial reading of *Southers* reveals that the argument

We are bound, of course, to uphold the trial court's entry of summary judgment in favor of the Board on any legal ground supported by the evidence. *Oakley Fertilizer, Inc. v. Continental Ins. Co.*, 276 S.W.3d 342, 350 (Mo.App. E.D. 2009) ("Because we are to affirm the trial court's grant of summary judgment . . . if the same is correct under any theory supported by the record developed below and presented on appeal, . . . we address the additional theories advanced.") (internal quotation omitted). We must consider, therefore, the argument raised by the Board for the first time on appeal that because Officer Evans was not named as a defendant in Benson's suit, a jury would have been unable to find Officer Evans negligent, the essential pre-condition to *respondeat superior* liability. The Board claims that Benson's failure to join Officer Evans as a defendant distinguishes this case from *Southers* where the individual defendants were named as parties.

We are not persuaded by the Board's newly minted argument. The Board has not articulated any logical or reasoned basis for concluding that the legal holding in *Southers* was inherently tied to and limited by the fact that the employees protected by the public duty doctrine were named as defendants. In fact, requiring the individual defendants to be named as a precondition to application of *Southers'* holding would represent a senseless exercise in futility. The Board conceded during oral argument that named individual defendants could easily gain their dismissal on the basis of the public duty doctrine, leaving only the governmental entity as a defendant.

More to the point, the Board admitted during oral argument that it could not locate any authority for its assertion that the negligence of an agent sufficient to support the vicarious liability of a principal cannot be determined unless the agent is named as a defendant. "The absence of citation of authority indicates that there is none." *State ex rel. State Highway Comm'n v. Zahn*, 633 S.W.2d 185, 188 (Mo.App. W.D.1982).

In fact, there is a plethora of authority demonstrating that the Board's argument is wholly without merit. The reported decisions in Missouri from time immemorial are replete with examples too numerous to mention of lawsuits brought only against a principal where the theory is vicarious liability, and recovery is thus dependent upon proof that an agent not joined as a defendant acted negligently in the course and scope of the agency. In recognition that this is, indeed, the law in the State of Missouri, the Missouri Approved Instructions ("MAI") contemplate instructing juries on *respondeat superior* or vicarious liability where the negligent employee or agent is not named as a defendant. For example, MAI 18.01, the verdict director to be employed when a principal or employer is being sued for the negligent act of his agent or servant where agency is in issue, provides two alternative instructions ***distinguished by whether the agent or servant is joined as a defendant.*** Similarly, MAI 37.05(1) and MAI 37.05(2), the verdict directors for use in *respondeat superior* or vicarious liability cases where comparative fault is alleged, both contemplate alternative or modified instructions ***distinguished by whether the agent or servant is joined as a defendant.*** Our court-approved jury instructions confirm that an employee need not be named as a defendant in order to find that the employee acted negligently to support the employer's *respondeat superior* liability.

advanced by the Board in its motion for summary judgment was clearly without merit.

Accordingly, we summarily reject the Board's attempt on appeal to distinguish *Southers.*

The trial court erroneously entered summary judgment in favor of the Board.

## Conclusion

We reverse and remand this for proceedings consistent with this Opinion. On remand, the trial court shall vacate its order granting the Board summary judgment.

All concur.